# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| JERONE MCDOUGALD,<br>    Petitioner, | Case No. 1:11-cv-790 |
| vs. | Spiegel, J.<br>Bowman, M.J. |
| WARDEN, LEBANON<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Lebanon Correctional Institution (LeCI) in Lebanon, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition, petitioner's brief in support of the petition, respondent's return of writ with exhibits, and petitioner's reply to the return of writ. (Docs. 3, 4, 9, 14).[1]

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On January 3, 2007, the Scioto County, Ohio, grand jury returned an indictment charging petitioner with one first-degree-felony count of possession of crack cocaine in violation of Ohio Rev. Code § 2925.11(C)(4)(e); one first-degree-felony count of trafficking in crack cocaine in violation of Ohio Rev. Code § 2925.03(A)(1) & (C)(4)(f); one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A)/(C); and one count having a weapon under

---

[1]Petitioner has also filed a non-dispositive motion requesting the issuance of an order directing the Scioto County, Ohio, Court of Common Pleas to produce the grand jury transcripts and a transcript prepared from a "DVR compact disk." (Doc. 11). The undersigned has denied petitioner's motion in a separate order issued this date.

disability in violation of Ohio Rev. Code § 2923.13(A)(3). (Doc. 9, Ex. 1). The indictment also included a firearm specification and forfeiture specification. (*Id.*). In its direct appeal decision, the Ohio Court of Appeals, Fourth Appellate District, provided the following summary of the facts that led to petitioner's indictment, as gleaned from testimony presented at petitioner's jury trial:[2]

> On December 18, 2006, authorities searched the premises at 1119 Seventeenth Street in Portsmouth and found crack cocaine, money, digital scales and a pistol. The two occupants of the residence, Kendra White and appellant, were arrested at the scene.
>
> ****
>
> At the jury trial Kendra White testified that appellant used her home to sell crack cocaine and that she also sold drugs on his behalf as well. Further, White testified that the digital scales belonged to appellant and, although the pistol belonged to her ex-boyfriend who was then incarcerated, appellant asked her to bring it inside the home so that he would feel more secure. White confirmed that she saw appellant at the premises with the gun on his person.
>
> Jesse[] Dixon and Melinda Elrod both testified that they purchased crack cocaine from appellant at the residence. Shawna Lattimore testified that she served as a "middleman" for appellant's drug operation and also helped him transport drugs from Dayton. She testified that she also saw appellant carry the pistol.

(*Id.*, Ex. 11, pp. 2-3).[3]

Prior to trial, petitioner's trial counsel filed motions on petitioner's behalf, requesting the suppression of (1) the evidence obtained during the search of Kendra White's residence; (2)

---

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has not presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

[3] In a footnote inserted in the quoted passage, the court further pointed out that Kendra White testified as follows at trial about her ex-boyfriend's connection to the pistol: "White explained that her boyfriend, Benny Simpson, previously used the pistol to shoot at her, but threw it somewhere in the backyard when he left. Simpson then allegedly called White from jail and instructed her to retrieve the pistol." (Doc. 9, Ex. 11, p. 2 n.1).

petitioner's statements to the police; and (3) any testimony regarding petitioner's post-arrest or pre-arrest silence in response to police questioning. (*Id.*, Exs. 2-4). After a hearing, the trial court issued a Judgment Entry overruling the suppression motions. (*Id.,* Ex. 5).

The matter proceeded to trial before a jury, which found petitioner guilty as charged. (*See id.*, Ex. 6). After a sentencing hearing held on April 3, 2007, the trial court issued a "Nunc Pro Tunc Judgment Entry" on May 16, 2007, sentencing petitioner to an aggregate prison term of twenty (20) years.[4] (*See id.*).

### Ohio Court of Appeals: Direct Appeal and Reopening Application

Petitioner's trial counsel filed a timely notice of appeal on petitioner's behalf to the Ohio Court of Appeals, Fourth Appellate District. (Doc. 9, Ex. 7). With the assistance of new counsel for appeal purposes, petitioner filed a brief raising the following assignments of error:

> 1. The trial court erred in violation of the defendant's rights under the federal and state Constitutions when it sentenced the defendant to consecutive sentences on allied offenses of similar import in violation of R.C. 2941.25.
>
> 2. Mr. McDougald was denied his rights under the United States and Ohio Constitutions to a fair trial when the prosecuting attorneys made cumulative improper and prejudicial remarks during closing arguments.
>
> 3. Mr. McDougald's constitutional rights to due process of law were violated when his convictions on all counts were against the manifest weight of the evidence.

(*Id.*, Ex. 8). On March 20, 2008, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling the assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 11).

On May 29, 2008, petitioner filed a timely *pro se* application pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, Fourth Appellate District, requesting that the direct

---

[4]Specifically, petitioner was sentenced to the following consecutive prison terms: five (5) years for the drug possession offense; nine (9) years for the drug trafficking offense; one (1) year for the possession of criminal tools offense; and five (5) years for the weapons offense. (*See* Doc. 9, Ex. 6).

3

appeal be reopened. (*Id.*, Ex. 15). In the application, as later supplemented, petitioner contended that his appellate counsel was ineffective for failing to raise the following issues on direct appeal:

> 1. The trial court erred by admitting [into] evidence, over objection, a laboratory report and technician[']s affidavit in violation of appellant's constitutional right of confrontation.
>
> 2. The evidence is constitutionally insufficient to sustain the appellant's conviction for having a weapon under disability.
>
> 3. The verdict form signed by the jury did not include either the degree of the offense[]s of which the appellant was convicted or a statement that an aggravating element had been found to justify convicting appellant of a greater degree of criminal offense pursuant to R.C. 2945.75(A)(2).
>
> 4. The trial court erred to the prejudice of the appellant [when] it allowed the State to elicit inflam[m]atory testimony of other unindicted "bad acts" in its effort to obtain conviction, denying the appella[nt] his federal and Ohio constitutional right to a fair trial.
>
> 5. The State failed to show that the criminal tools seized constituted criminal tools under R.C. 2923.24.
>
> 6. Appellant was denied the constitutional right to compulsory process over potential witness who acted as confidential informant, whose testimony was relevant to aid in his defense.
>
> 7. The evidence was insufficient to support conviction for possession of drugs.
>
> 8. Mr. McDougald . . . was denied his rights to an indictment in violation of Article I, Section 10 of the Ohio Constitution.
>
> 9. Mr. McDougald . . . was denied his rights under the United States and Ohio Constitution[s] to a fair trial when the trial court failed to give a curative instruction.
>
> 10. Mr. McDougald . . . was denied his rights under the United States and the Ohio Constitution[s] to []effective assistance of counsel when appellant[']s counsel over looked the in[]effectiveness of trial counsel for failure to raise the continued detention in violation of appellant's due process rights and Fourth Amendment to the United States Constitution.
>
> 11. Mr. McDougald . . . was denied his rights under the United States and the Ohio Constitution[s] to []effective assistance of counsel when appellant's counsel

4

over looked the in[]effectiveness of trial counsel for failure to raise the officers arrested appellant without probable cause, in violation of the Fourth Amendment of the United States Constitution and Article One, Section Fourteen of the Ohio Constitution.

12. Appellant was denied his rights under the Fifth Amendment to the United States [Constitution] against self incrimination and the right not to testify on the merits of the charges at the motion to sup[p]ress.

(*Id.*, Exs. 15-16).

On September 10, 2008, the Ohio Court of Appeals issued an entry denying petitioner's application for reopening of the direct appeal. (*Id.*, Ex. 17).

Thereafter, on January 2, 2009, petitioner filed a *pro se* motion for leave to amend his reopening application to add four more claims of error. (*See id.*, Exs. 18, 44). On January 9, 2009, the Ohio Court of Appeals denied that motion as moot because petitioner's reopening application had already previously been denied. (*See id.*, Exs. 19, 44).

### Delayed Appeal To Ohio Supreme Court

Petitioner did not pursue an appeal to the Ohio Supreme Court from the denial of his reopening application. Petitioner also did not pursue a timely appeal to the Ohio Supreme Court from the state appellate court's March 20, 2008 decision affirming the trial court's judgment on direct appeal. On March 26, 2010, over two years after the Ohio Court of Appeals issued its direct appeal decision, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal with the Ohio Supreme Court. (Doc. 9, Exs. 12-13). In the memorandum submitted in support of his motion for leave to file a delayed appeal, petitioner provided the following explanation for his untimely filing:

> I was unable to file an appeal to this Court within 45 days of the Court of Appeal[s'] decision for the following reasons. . . . Appellant mailed original Court Opinion to state Public Defender Office 2 yrs ago seeking assistance. In fil[]ing this Jurisdictional Memorandum however, the Public Defender[']s Office did not repl[y] and written request for the return of the Court of Appeals['] Entry has not been answered and the appellant has been unsuc[c]essful in getting

5

another copy from the courts.

(*Id.*, Ex. 13). Petitioner also stated in an attached affidavit that he "is unable to understand the law and it is impossible to receive adequate help with the prison population overcrowding." (*Id.*, Ex. 13, "Affidavit Of Reasons For Delay"). Petitioner attached to his motion a copy of the appellate court's direct appeal decision that had been published on the Westlaw website. He stated that if he were granted a delayed appeal, he would raise two propositions of law challenging (1) the imposition of consecutive sentences for the allied offenses of drug possession and trafficking, and (2) the prosecutor's remarks during closing argument. (*See id.*, Ex. 13).

On May 5, 2010, the Ohio Supreme Court denied petitioner's motion for delayed appeal and dismissed the appeal without opinion. (*Id.*, Ex. 14).

### State Post-Conviction Proceedings

On December 18, 2008, a few months after the Ohio Court of Appeals denied his application to reopen the direct appeal, petitioner filed a *pro se* petition for post-conviction relief with the trial court. (Doc. 9, Ex. 20). In the petition, petitioner claimed that (1) he was denied his Sixth Amendment right to confront witnesses against him under the Supreme Court's "new[]" ruling in *Melendez-Diaz v. Massachusetts,* 552 U.S. 1256 (2008), granting certiorari review of an analogous claim;[5] and (2) the consecutive sentences imposed for the allied offenses of drug possession and drug trafficking amounted to a double jeopardy violation under the Ohio Supreme Court's "new[]" ruling in *State v. Cabrales*, [886 N.E.2d 181 (Ohio 2008)]. (*See id.*). The trial court overruled the post-conviction petition on February 9, 2009. (*Id.*, Brief, p. 7 & Ex.

---

[5]Later, in June 2009, the Supreme Court issued a decision in *Melendez-Diaz*, holding that under *Crawford v. Washington*, 541 U.S. 36 (2004), the admission of certificates of state laboratory analysts stating that material seized by the police was cocaine of a certain quantity violated the criminal defendant's Sixth Amendment right to confront the witnesses against him. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). That decision was issued after the trial court had overruled petitioner's post-conviction petition, but before the Ohio Court of Appeals affirmed the trial court's judgment on appeal. (*See* Doc. 9, Exs. 23, 28).

23).

Petitioner timely appealed the trial court's ruling to the Ohio Court of Appeals, Fourth Appellate District; he asserted as the sole assignment of error that his "Sixth Amendment right to confrontation was violated when the court admitted into evidence the drug laboratory analysis report from the Ohio Bureau of Criminal Investigation (B.C.I.), over objection[,] without permitting him an opportunity to cross-examine 'the chemist or technician who prepared it.'" (*Id.*, Exs. 24-25). On August 17, 2009, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment on the ground that the petition was "clearly untimely," and petitioner had not demonstrated that the time-bar should be excused because "the United States Supreme Court had in fact recognized a new federal or state right that applied retroactively to him" in the *Melendez-Diaz* case. (*Id.*, Ex. 28).

Respondent states that petitioner did not pursue a further appeal to the Ohio Supreme Court. (*Id.*, Brief, p. 8). Instead, on October 19, 2009, petitioner filed a second *pro se* petition for post-conviction relief with the trial court, raising the same claim of error that he had presented to the trial and appellate courts in the prior post-conviction proceeding. (*Id.*, Ex. 29). On December 28, 2009, the trial court overruled the post-conviction petition based on the finding that "this issue has already been decided by the Court of Appeals and even it it were timely filed, the issue is [res] judica[t]a." (*Id.*, Ex. 32). Respondent states that petitioner did not pursue an appeal from that decision in the state courts. (*Id.*, Brief, p. 8).

**State Habeas Corpus Petition**

On February 2, 2011, over a year after the post-conviction proceedings concluded and approximately nine months after the Ohio Supreme Court denied his motion for leave to file a delayed appeal from the Ohio Court of Appeals' March 20, 2008 direct appeal decision, petitioner filed a *pro se* petition for state habeas corpus relief with the Ohio Court of Appeals,

7

Twelfth Appellate District. (Doc. 9, Ex. 33). In the petition, petitioner asserted for the first time the following claims for relief:

> 1. THE TRIAL COURT WAS WITHOUT COMPETENT JURISDICTION. The Charging officers falsified the complaint in initiating the charges against Petitioner under maliciously false pretense, thereby invoking the incompetent jurisdiction of the trial court.
>
> 2. THE PETITIONER IS ACTUALLY INNOCENT. The Petitioner . . . claims actual innocence of the charges presented to the trial court in the underlying case.
>
> 3. THE PROSECUTION USED FALSE TESTIMONY. The prosecuting attorney knowingly used and relied upon false/perjured testimony in procuring the convictions against the Petitioner . . . in the underlying case.

(*Id.*). The respondent Warden of LeCI responded by filing a motion to dismiss. (*See id.*, Ex. 34).

On April 6, 2011, the Ohio Court of Appeals granted the respondent's motion to dismiss. (*Id.*, Ex. 35). In so ruling, the court reasoned in pertinent part:

> Habeas corpus will not lie when the petitioner is in the custody of an officer under process issued by a court or magistrate, or pursuant to the judgment or order of a court of record, when the court or magistrate had jurisdiction to issue the process, judgment or order. R.C. 2725.05. Where the petitioner is convicted of a criminal offense and sentenced to imprisonment by a court of competent jurisdiction, an appeal rather than habeas corpus is the proper remedy to correct any error or irregularity claimed to have occurred in the proceedings. . . .
>
> Turning to the present case, there is no question that the Scioto County Court of Common Pleas had jurisdiction to convict petitioner of possession of drugs, drug trafficking, possession of criminal tools and having a weapon under disability. Further, all of the arguments raised by petitioner can or could have been raised by way of appeal or post-conviction relief. Habeas corpus is therefore not available.... Petitioner had or has an adequate remedy at law.

(*Id.*).

Petitioner filed a timely appeal to the Ohio Supreme Court, raising the same claims of error that he had presented to the Ohio Court of Appeals. (*Id.*, Exs. 36-37). On September 15, 2011, the Ohio Supreme Court affirmed the appellate court's ruling on the ground that the claims

8

were "not cognizable in habeas corpus." (*Id.*, Ex. 40). Thereafter, petitioner filed a motion for reconsideration, which was denied by the state supreme court on November 16, 2011. (*Id.*, Exs. 41-42).

## Federal Habeas Corpus

The instant habeas corpus action commenced in November 2011. In the petition, petitioner presents the same three claims for relief that he asserted in his state habeas corpus petition. (*See* Doc. 3, pp. 5, 6, 8).

In the return of writ filed in response to the petition, respondent contends that petitioner has waived all of his claims for relief as a result of his procedural defaults in the state courts. (Doc. 9, Brief, pp. 14-20). Respondent also alternatively contends that petitioner's claims for relief are not cognizable in this federal habeas proceeding and, in any event, lack merit. (*Id.*, pp. 10-14, 21-27). Petitioner has filed a reply to the return of writ. (Doc. 14).

## II. THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONER PROCEDURALLY DEFAULTED AND HAS WAIVED HIS CLAIMS FOR RELIEF

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate

review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). In

those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991). Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The Court stated: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test that was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under

11

the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw*, __ F. App'x __, No. 06-3141, 2012 WL 3241545, at *2 (6th Cir. Aug. 9, 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson, supra,* 2012 WL 3241545, at *3. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed numerous procedural defaults in the state courts. First, to the extent that petitioner's claims are record-based, he failed to raise them as assignments of error on direct appeal or as examples of ineffectiveness on the part of his appellate counsel in his application to reopen the direct appeal. (*See* Doc. 9, Exs. 8, 15, 16, 18). Second, to the extent that petitioner's claims are based on evidence outside the trial record, petitioner failed to assert them as claims of error in his state post-conviction petitions. (*See id.*, Exs. 20, 29). Instead, petitioner raised the claims for the first time in his state habeas corpus petition filed with the Ohio Court of Appeals, Twelfth Appellate District, in February 2011, nearly four years after the

trial court issued its final judgment entry and long after the state appeal, reopening and post-conviction proceedings had concluded. (*See id.*, Ex. 33 & Exs. 6, 11, 14).

The Ohio Court of Appeals was the first state court to rule on petitioner's habeas petition. In granting the respondent's motion to dismiss, the court reasoned that the writ of habeas corpus was not available as a remedy because petitioner "had or has an adequate remedy at law" to the extent his claims "can or could have been raised by way of appeal or post-conviction relief." (*See id.*, Ex. 35). When petitioner pursued a further appeal to the Ohio Supreme Court, the state supreme court affirmed the appellate court's decision, similarly finding that petitioner's claims were "not cognizable in habeas corpus" in light of prior cited state supreme court precedents. (*Id.*, Ex. 40).

In concluding that habeas corpus was not available as a remedy for petitioner to pursue his claims for relief, the state courts enforced a state procedural sanction that precluded the courts from reviewing the claims' merits. The state procedural sanction applied by the state courts constituted an independent and adequate state ground for denying habeas corpus relief. As the Ohio Supreme Court apparently recognized, the bar to review was based on prior state supreme court precedents, which were firmly established and regularly followed by the time petitioner filed his state habeas petition with the Ohio Court of Appeals. *See, e.g., Pishok v. Kelly*, 910 N.E.2d 1033, 1034 (Ohio 2009) (per curiam) (holding in accordance with other cited prior precedents that "[h]abeas corpus is not available to challenge the validity or sufficiency of a charging instrument" because the convicted felon "had an adequate remedy in the ordinary course of law by appeal to raise his claim that the indictment was defective"); *Junius v. Eberlin,* 907 N.E.2d 1179, 1180 (Ohio 2009) (per curiam) (holding in accordance with cited prior precedents that "[h]abeas corpus is not available to remedy claims concerning the validity of an

13

indictment" and that the petitioner also "had adequate legal remedies to raise his claim of actual innocence"); *Keith v. Bobby,* 884 N.E.2d 1067, 1070 (Ohio 2008) (per curiam) (citing *Williamson v. Williams*, 812 N.E.2d 1283, 1284 (Ohio 2004) (per curiam), and *Howard v. Randle*, 767 N.E.2d 268, 269 (Ohio 2002) (per curiam), as support for the holding that "claims of fraud upon the court, prosecutorial misconduct, and perjured testimony are not cognizable in habeas corpus").

Prior to filing his state habeas petition, petitioner had already exhausted his state legal remedies, which the Ohio Court of Appeals pointed out were provided "by way of appeal or post-conviction relief." (*See* Doc. 9, Ex. 35). Specifically, petitioner pursued a direct appeal in the Ohio Court of Appeals and unsuccessfully sought leave to file a delayed appeal from the Ohio Court of Appeals' direct appeal decision with the Ohio Supreme Court. (*See id.*, Exs. 12-14). Moreover, petitioner unsuccessfully sought to reopen his direct appeal in the Ohio Court of Appeals. (*See id.*, Exs. 15-19). Although petitioner did not pursue an appeal to the Ohio Supreme Court from the denial of his reopening application, he is not permitted to do so now because delayed appeals to the state supreme court are not permitted in reopening matters. *See* Ohio S.Ct. Prac. R. 2.2(A)(4)(c). Finally, petitioner has already unsuccessfully sought post-conviction relief in the state courts. (*See* Doc. 9, Exs. 20-32). In affirming the denial of petitioner's first post-conviction application, the Ohio Court of Appeals ruled that the petition was "clearly untimely." (*Id.*, Ex. 28). Although petitioner did not pursue an appeal to the Ohio Supreme Court from that ruling, he is not permitted to do so at this late juncture because delayed appeals to the state supreme court are also not permitted in cases involving post-conviction relief. *See* Ohio S.Ct. Prac. R. 2.2(A)(4)(c).

Because petitioner did not present his claims for federal habeas relief to the state courts

when exhausting the state appeal and post-conviction avenues of relief, and because the Ohio appellate courts held that state habeas corpus review was unavailable to address petitioner's claims, the Ohio courts were not provided with an opportunity to consider the merits of any of petitioner's claims for relief. Therefore, the undersigned concludes that petitioner procedurally defaulted the claims alleged as grounds for relief in the instant action. The claims are barred from review by this Court unless petitioner can demonstrate cause for and prejudice from his defaults in the state courts or that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice." *See Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson, supra,* 2012 WL 3241545, at *3. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

  Petitioner has not established cause for his procedural defaults in this case. In his motion for delayed appeal to the Ohio Supreme Court, he claimed that he was unable to file a timely appeal because he neither had in his possession nor could obtain a copy of the appellate court's direct appeal decision. (*See* Doc. 9, Ex. 13). However, even assuming, without deciding, that petitioner's contention is sufficient to establish cause for his failure to file a timely appeal to the Ohio Supreme Court, the argument fails to address why petitioner did not raise his claims for federal habeas relief in the state appeal, reopening or post-conviction proceedings, or why he waited until nearly four years after he was convicted and sentenced to assert the claims for the first time in a state habeas petition. Because petitioner's inability to obtain a copy of the Ohio Court of Appeals' direct appeal decision does not adequately explain petitioner's procedural default of his federal habeas claims, the undersigned concludes that it does not constitute cause in this case.

  Petitioner also generally contended in his delayed appeal motion that he was unable to perfect a timely appeal to the Ohio Supreme Court because he is a *pro se* litigant lacking

knowledge of the law, who is unable to obtain adequate assistance at the prison where he is incarcerated. However, in *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (per curiam)*,* the Sixth Circuit rejected those arguments, holding that the petitioner's *pro se* status, limited access to the prison law library, and ignorance of the law and procedural requirements for filing a timely appeal were insufficient to establish cause. *See also Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995). Similarly, petitioner's conclusory assertion regarding his lack of legal knowledge and lack of adequate assistance at the prison is inadequate to constitute cause for his procedural defaults in this case. *Cf. Rogers v. Warden, Warren Corr. Inst.,* No. 1:10cv397, 2011 WL 1771691, at *6 (S.D. Ohio Feb. 8, 2011) (Litkovitz, M.J.), *adopted,* 2011 WL 1753711 (S.D. Ohio May 9, 2011) (Dlott, J.).

Finally, petitioner has alleged a claim of "actual innocence" as a ground for relief in his federal habeas petition. (Doc. 3, p. 6). He also argues in his reply to the return of writ that all of his claims for relief are subject to review to the extent he "can make a colorable showing of actual innocence." (Doc. 14, p. 7).

A "fundamental miscarriage of justice" occurs, which may justify excusing a procedural bar to federal habeas review, when the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. However, to establish a credible claim of actual innocence sufficient to overcome the procedural bar, the petitioner must "establish in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House v. Bell,* 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327); *cf. Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *McSwain v. Davis,* 287 F. App'x 450, 458 (6th Cir. 2008). The standard is "demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327). To be

16

credible, a claim of actual innocence must be based on "new reliable evidence . . . that was not presented at trial." *House,* 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 324); *see also Calderon v. Thompson,* 523 U.S. 538, 559 (1998). *Cf. Perkins v. McQuiggin*, 670 F.3d 665, 671 (6th Cir. 2012) ("claims of actual innocence must be based on new reliable evidence") (internal citation and quotation omitted), *petition for cert. filed*, 81 U.S.L.W. 3074 (U.S. July 25, 2012) (No. 12-126).

In this case, petitioner relies solely on evidence that was presented or made available to the defense during the trial proceedings as support for his contention that he is actually innocent of the crimes that he was convicted of committing. (*See* Doc. 14; *see also* Doc. 4). Petitioner specifically contends that Kendra White's trial testimony was "perjured" and, therefore, should not have been accorded any credence because it differed from prior statements she made in a recorded police interview.[6] (*See id.*). In his reply brief, petitioner also argues that the trial testimony of State witnesses' Jesse Dixon, Melinda Elrod and Shawna Lattimore was "irrelevant" to the issue of his guilt or innocence for the charged offenses that occurred on December 18, 2006. (*See* Doc. 14, pp. 4-5).

To the extent that petitioner's arguments can be construed as an attack on the sufficiency of the evidence supporting his convictions, he has not established a credible claim of actual innocence, which means factual innocence, not mere legal insufficiency. *See House,* 547 U.S. at 538; *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett,

---

[6]Petitioner also claims that given Kendra White's "admissions" in her recorded statement to the police, the "charging officer" fraudulently charged petitioner with possession of the firearm, digital scales, monies and crack cocaine found in White's residence. (*See* Doc. 4, pp. 11-12; *see also* Doc. 14, p. 6). For the reasons discussed below in addressing petitioner's claim attacking Kendra White's credibility, petitioner has not established a credible claim that the charging officer "falsified the complaint against him by charging him with bogus charges" or that petitioner is actually innocent of the charged offenses based on such a claim.

17

J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011). In addition, petitioner's actual innocence claim is not based on "new reliable evidence" that was not presented at trial to the extent petitioner contends that Dixon, Elrod and Lattimore provided "irrelevant" testimony at trial or challenges the credibility of Kendra White's trial testimony. (*See* Doc. 14, pp. 4-5). Even assuming that petitioner's attack on the credibility of Kendra White's testimony is based on new evidence to the extent that petitioner cites to prior inconsistent statements that White made in her recorded police interview, which were not brought out at trial, the undersigned finds, upon review of the trial transcript, that the cited inconsistencies do not demonstrate, as petitioner has claimed, that White lied at his trial. Most importantly, petitioner has not established that in light of the cited inconsistencies between White's statements to the police and her trial testimony, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *See House,* 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327). Therefore, petitioner has not established a credible claim of actual innocence sufficient to justify excusing the procedural bar to review in this case.

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted his claims for relief by failing to properly raise them in the appeal, reopening or post-conviction proceedings that he initiated in the state courts, and by instead presenting them in a state habeas proceeding where review by the state courts was precluded. Because petitioner has not demonstrated cause for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, petitioner has waived all grounds for federal habeas relief that are asserted in the instant petition. The petition, which is thus barred from review by this Court, is subject to dismissal with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[7]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

        *s/Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

---

[7]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of the defaulted grounds for relief. *See Slack,* 529 U.S. at 484. However, it is noted that to the extent that petitioner asserts a free-standing claim of actual innocence as his second ground for relief, he has failed to allege a cognizable ground for federal habeas relief. *See, e.g., Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (and cases cited therein); *see also Herrera v. Collins,* 506 U.S. 390, 400-01 (1993).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERONE MCDOUGALD,
    Petitioner

Case No. 1:11-cv-790

vs

Spiegel, J.
Bowman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
    Respondent

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc